IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FARM CREDIT SERVICES OF AMERICA, FLCA, <br><br> Plaintiff, <br><br> vs. <br><br> CHAD LOECKE, <br><br> Defendant. | **8:26CV64** <br><br><br> **MEMORANDUM AND ORDER** |

This matter comes before the Court on Plaintiff's, Farm Credit Services of America, FLCA,'s, motion for preliminary injunction.  Filing No. 6.  The Court previously granted its request for a temporary restraining order and held a hearing on its motion for preliminary injunction on February 23, 2026, at which it took judicial notice of the parties' evidence as stated on the record and heard argument from the parties.  For the reasons set forth herein, the Court denies Plaintiff's motion for a preliminary injunction.

I.      BACKGROUND

Farm Credit is part of the federal Farm Credit System, soliciting private hail insurance, federally reinsured multiple peril crop insurance, revenue protection, yield protection, livestock insurance, named peril insurance, and any other current or future crop insurance plans issued under the authority of the Federal Crop Insurance Act, 7 U.S.C. § 1508 *et seq.* (collectively "crop insurance"), to farmers and ranchers throughout Iowa, Nebraska, South Dakota, and Wyoming.  Filing No. 1 at 2.  Defendant, Chad Loecke, was employed by Farm Credit as an insurance officer from November 15, 2010, through January 2, 2026, when he voluntarily terminated his employment.  Filing No. 1 at 1–3.

Starting on January 1, 2015, Loecke was subject to an employment contract that included an "Assignment, Nonsolicitation, and Nondisclosure Agreement." Filing No. 1-1 at 1–3. The contract prohibited Loecke from soliciting customers he did business with during the course of his employment for a period of two years after his employment ended. Filing No. 1-1 at 1. Additionally, the contract prohibited him from improperly using or disclosing confidential information he obtained in the course of his employment. Filing No. 1-1 at 2. The relevant provisions state in full:

> **NONSOLICITATION OF CUSTOMERS**. For a period of two (2) years following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not, seek or accept employment with, and will not call on or solicit the business of, or sell to, or service (directly or indirectly, on Employee's own behalf or in association with or on behalf of any other individual or entity), any of the customers of FCSAmerica and/or Frontier with whom Employee actually did business and had personal contact while employed by FCSAmerica or Frontier, except to the extent such activities are unrelated to and not competitive with the business, products or services that Employee offered or provided on behalf of FCSAmerica or Frontier and cannot adversely affect the relationship or volume of business that FCSAmerica and/or Frontier have with such customers.
>
> . . . .
>
> **NONDISCLOSURE OF CONFIDENTIAL INFORMATION**. During the term of Employee's employment with FCSAmerica and Frontier and following the termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall not use for any purpose or divulge, disclose, or communicate to any person or entity, in any manner whatsoever, any Confidential Information acquired during or as a result of Employee's employment with FCSAmerica and/or Frontier. Employee agrees that the Confidential Information is proprietary to FCSAmerica or Frontier and is owned solely by FCSAmerica or Frontier, and that the disclosure thereof would cause irreparable harm and damage to the business of FCSAmerica and/or Frontier. Employee will not access, copy, download, transmit, or reproduce any Confidential Information (whether stored electronically or otherwise) for any purpose other than furthering the business interests of FCSAmerica and Frontier. Employee will never use or disclose Confidential Information (even following the termination of employment) for any purpose other than furthering the

2

business interests of FCSAmerica or Frontier.  Upon termination (voluntary or involuntary, for any reason or no reason) of Employee's employment with FCSAmerica and/or Frontier, Employee shall immediately return to FCSAmerica and Frontier, respectively all data, materials and other documents containing or related to any Confidential Information belonging to each respectively.

Filing No. 1-1 at 1–2.

Loecke has now formed a new insurance agency ("Loecke Crop Risk Management Agency LLC") as a subcontractor with a company called DeLco.  Filing No. 9-1 at 4; Filing No. 9-3.  DeLco provides crop insurance and is therefore a competitor of Farm Credit's.  Filing No. 17-1 at 1.  Farm Credit argues several of Loecke's former clients have left it and some have ended up doing business with DeLco instead.  Filing No. 9-1 at 4.  It further alleges Loecke accessed and took confidential customer information prior to leaving its employ and has utilized this information to take its clients.  *See* Filing No. 1 at 7–8.

Farm Credit filed suit against Loecke for breach of contract, breach of the duty of loyalty, and tortious interference with a business relationship.  *See generally* Filing No. 1. It seeks a preliminary injunction against "Loecke and his agents and those acting in active concert or participation with him" enjoining them from using its confidential information and soliciting the business of, selling to, or servicing any of the customers of Farm Credit with whom Loecke actually did business and had personal contact while employed by Farm Credit.  Filing No. 6 at 2–3.

In support of its motion for injunctive relief, Farm Credit submitted a declaration from its Senior Vice President of Insurance and Consumer Lending, Anthony Jesina. Filing No. 9-1.  According to Jesina, Farm Credit has lost customers who Loecke previously serviced and DeLco has recruited much of this business.  Filing No. 9-1 at 3–

3

4.   DeLco also utilized Loecke's name in advertisements, which Jesina believes was intended to recruit Loecke's former clients to DeLco.  Filing No. 9-1 at 4; Filing No. 9-3. Farm Credit also introduced evidence that Loecke had accessed information on its confidential platform, including customers' taxpayer identification numbers.  Filing No. 13-1.

Loecke responded to Farm Credit's motion for injunctive relief.  He avers he has not solicited any customers with whom he did business while employed by Farm Credit for the purpose of selling crop insurance.  Filing No. 17-1 at 6–7.  According to Loecke, he sells agricultural chemicals with DeLco, which is not competitive with Farm Credit since it provides only insurance services.  *See* Filing No. 17-1 at 6.  Loecke also provides crop insurance services, but only to customers with whom he had no relationship during his Farm Credit employment.  Filing No. 17-1 at 6.  Loecke states he did not copy or retain any confidential information from his employment Farm Credit, including customer tax identification numbers.  Filing No. 17-1 at 6.  Loecke also submitted evidence that when contacted by a former customer, he did not respond, as well as two declarations from other former clients confirming he declined to do business with them.  Filing No. 17-1 at 13; Filing No. 17-1 at 14–19.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 65 governs the issuance of preliminary injunctive relief.  In deciding whether to issue a preliminary injunction, the Court considers: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed

4

on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Consequently, a court must be "mindful that a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the merits." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (quoting *Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)).

### III.      DISCUSSION

#### A. Likelihood of Success on the Merits

The Court starts with the "most important" factor—Plaintiff's likelihood of success on the merits. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). In this posture, Plaintiff "must show that it has at least a 'fair chance of prevailing.'" *Miller v. Honkamp Krueger Fin. Servs., Inc.*, 9 F.4th 1011, 1014 (8th Cir. 2021) (quoting *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013). Farm Credit asserts three causes of action: breach of contract, breach of the duty of loyalty, and tortious interference with business relationships. Filing No. 1 at 8–11. The Court addresses the likelihood of success on each of these three causes of action in turn.

##### 1.  Breach of Contract

Under Nebraska law, a claim for breach of contract requires showing: (1) a valid promise, (2) a breach of that promise, (3) damages, and (4) compliance with any conditions precedent. *See Ryan v. Streck, Inc.*, 958 N.W.2d 703, 710 (Neb. 2021) (describing the elements of a contract claim). At issue in this case is whether the contract

5

is enforceable and whether Plaintiff has shown a likelihood of success of proving Loecke breached his contract.

Under Nebraska law,[1] restrictive covenants like those at hand are enforceable if they are reasonable. For example, the Nebraska Supreme Court has upheld limitations on soliciting customers who the employee had personal relationships with during their time with the employer. *Pro. Bus. Servs., Co. v. Rosno*, 589 N.W.2d 826 (Neb. 1999). Likewise, the Nebraska Supreme Court upheld a two-year limitation on soliciting a former employee's clients. *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626, 638–39 (Neb. 2008).

### a. Nonsolicitation provision

Farmer Credit is likely to show the nonsolicitation covenant in Loecke's employment contract is enforceable. Loecke's nonsolicitation provision lasts for two years and is limited to Farm Credit's customers "with whom [he] actually did business and had personal contact while employed by [Farm Credit], except to the extent such activities are unrelated to and not competitive with the" Farm Credit's business. Filing No. 1-1 at 1. Thus, the contract's limitations on duration and scope are comparable to those upheld by the Nebraska Supreme Court as reasonable, and Farm Credit has therefore shown a likelihood of succeeding on demonstrating the nonsolicitation agreement is valid and enforceable.

However, Farm Credit has not met its burden to show a likelihood of success proving that Loecke breached the nonsolicitation provision. Farm Credit's evidence that Loecke is soliciting former customers is based on speculation. It argues that because his

---

[1] The parties agree Nebraska law applies.

6

former clients have left and several have gone to the parent company associated with his agency, DeLco, he must have solicited them to do so.  But it has no actual evidence of solicitation.  By contrast, Loecke has adduced evidence that he has avoided contact with his former customers or, when forced to have contact with them, has informed them of his nonsolicitation contract and declined to conduct business with them.  While the timing of Loecke's departure and his clients choosing to do business with DeLco may be suspicious, the current record does not contain enough actual evidence to conclude that Farm Credit has a fair chance of success on this claim.

### b. Use of confidential information

Loecke's employment contract also contains a provision prohibiting him from using or divulging Farm Credit's "confidential information."  The parties do not dispute the enforceability of this provision, but Farm Credit has failed to carry its burden to show a likelihood of success on its claim that Loecke breached the confidentiality provision.  The parties presented scant information on this point, choosing instead to focus on the nonsolicitation provision.  Farm Credit produced evidence that Loecke accessed information restricted on its internal platform that included customers' taxpayer identification numbers.  Filing No. 13-1.  But Farm Credit presents no evidence that this information constitutes "confidential" information belong to it rather than to the customers themselves. Nor has Farm Credit presented any evidence that Loecke has accessed, retained, or used the taxpayer information for an improper purpose following the termination of his employment Farm Credit as required by the contract.  Farm Credit does not explain how having a customer's taxpayer information could be utilized to further Loecke's new insurance agency business.

7

Therefore, Farm Credit has not shown a likelihood of success on the merits of its claim that Loecke breached either the nonsolicitation or confidentiality provision of his employment contract. Additionally, as explained in the temporary restraining order, Farm Credit's request to enjoin third parties such as Loecke's new employer, employees, and coworkers is overly broad and not encompassed by the employment agreement.

### 2. Breach of the Duty of Loyalty

Under Nebraska law, even in the absence of a contract, an employee has a general duty of loyalty to their employer. *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1032 (8th Cir. 2020). An employee may "plan[] and prepare[] for a competing business" so long as the employee does not "not act in direct competition with his or her employer while still employed." *Dick v. Koski Pro. Grp., P.C.*, 950 N.W.2d 321, 367 (Neb. 2020), *opinion modified on denial of reh'g Dick v. Koski Pro. Grp., P.C.*, 953 N.W.2d 257 (Neb. 2021). In particular, an employee cannot siphon her employer's clients and customers to a competing venture during her employment. *Id.*

Farm Credit has failed to meet its burden to show a likelihood of success on this claim. Its argument depends on its assertion that Loecke is poaching his former customers, but as explained in the previous section discussing the breach-of-contract cause of action, this argument is based on speculation rather than concrete facts at this time. To the extent Farm Credit may argue Loecke's accessing customer tax identification prior to his departure violated his duty of loyalty, this argument fails because there is no evidence Loecke utilized this information to grow his competing business or even an explanation of how this information would aid in his new venture. Accordingly, Farm Credit

8

has not presented adequate evidence to allow the Court to conclude it is likely to succeed on its claim that Loecke breached his duty of loyalty.

### 3. *Tortious Interference with Business Relationships*

To succeed on its tortious interference claim, Farm Credit must show: "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Thompson v. Johnson*, 910 N.W.2d 800, 807 (Neb. 2018). "[V]alid competition, including inducement of third persons to do their business with oneself rather than with a particular competitor, cannot be the basis for a tortious interference claim, because such conduct is justified." *Dick*, 950 N.W.2d at 378 (citation modified).

Farm Credit alleges Loecke engaged in unjustified acts of interference rather than valid competition when he used its confidential client information to solicit clients for his competing business while still employed with Farm Credit and when he breached his nonsolicitation provision to take his former clients for his new business. *See* Filing No. 1 at 11. However, as explained above, it has failed to present evidence that Loecke used any confidential information, such as the taxpayer information, to further his competing business. Therefore, Farm Credit has failed to show a likelihood of success on the merits of his tortious interference claim.

### B. Irreparable Harm

Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen.*

9

*Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The Eighth Circuit has recognized that the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citation omitted).

Farm Credit has failed to show it will suffer irreparable harm in the absence of injunctive relief. It argues it will continue to lose customers to Loecke and DeLco and that it cannot calculate the loss because farmers choose to plant different crops year to year that could change the value of their business as insurance customers. But this argument ignores that the nonsolicitation agreement is limited to two years. If Farm Credit prevails on the merits of its claims, the harm it suffered can be easily calculated and compensated through an award of monetary damages based on the business it lost during the two-year period of Loecke's contract. Accordingly, this factor does not warrant the issuance of a preliminary injunction.

### C. Balance of Harms

The third factor the Court weighs is the balance of the harms. The potential hardship to Loecke in granting injunctive relief would be limiting the business he can accept in his new employment. The potential harm to Farm Credit is losing additional customers. However, because the record currently does not support finding Loecke violated the nonsolicitation provision, the balance of harms overall weighs in favor of denying injunctive relief.

### D. The Public Interest

The fourth factor the Court must consider is the public interest. The public interest favors enforcement of voluntary contract obligations. *See Cigna Corp. v. Bricker*, 103

10

F.4th 1336, 1348 (8th Cir. 2024) (collecting authority). However, as explained above, the only evidence in this case is that Loecke is, in fact, abiding by his employment agreement. Accordingly, this factor weighs in Loecke's favor.

## III.    CONCLUSION

For all these reasons, the Court concludes a preliminary injunction is not warranted to enjoin Defendant from calling on or soliciting the business of, or selling to, or servicing (directly or indirectly), any of the customers of Farm Credit with whom he actually did business and had personal contact while employed by Farm Credit. A preliminary injunction is also not warranted to restrict the use of any confidential information. Lastly, a preliminary injunction is not warranted as to Defendant's new employer, employees, or coworkers as they are not bound by his employment contract with Farm Credit.

IT IS ORDERED:

1. Plaintiff's Motion for Preliminary Injunction, Filing No. 6, is denied.

2. Defendant shall answer, or otherwise respond, to the complaint within 21 days of the date of this order.

Dated this 23rd day of February, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge